The next case on for argument, excuse me, is Capstone Logistics versus Navarette. May it please the Court, Your Honors. My name is Michelle Ferber. I represent the defense and the defendants, Navarrette et al. As a foundational matter, we are here with respect to the extraordinary remedy of a preliminary injunction that was issued in this case over a year ago. The Court reviews this entry of a preliminary injunction for an abuse of discretion, but it does review the Court's conclusions of law de novo. To the extent that the Court is able to determine issues of finding and facts that were made by Judge Daniels below, then those issues of fact and law are to be reviewed for clear error and must include whether those facts have been disproven. I would direct Your Honor's attention to the Iwonder v. Abram case where this circuit found that the facts and conclusions of law are required with respect to the issuance of a preliminary injunction. It's not an optional basis. There is a transcript in this hearing, but I think upon review of that, it's clear that we don't know as we sit here today what law was applied. Was the finding of the issuance of the preliminary injunction made under California law? Was it made under Delaware law? I think it's pretty clear he made it under Delaware law. Okay. Well, if that is true, then we would submit that that is the incorrect conclusion under the substantial relationship test that Judge . . . May I ask you . . . Sure. . . . that the circumstances were enforceable depended upon whether under . . . if California law applies, that it depends on whether these were made in connection with the merger or whether they were in the employment agreement. Is that the essential question under California law? I believe that is a central question under both California or Delaware law, but particularly with respect to California law, which does have the Business and Professions Code and all of the progeny that says that we are a mobile state and economy, and unless these non-solicitation, non-competition clauses are in connection with the sale of goodwill of a business . . . Tell me, what's your best evidence that these were made in connection with an employment as opposed to a merger? Sure. The restrictive covenants are in . . . buried within employee-issued stock incentive agreements that were signed two months after the merger was completed, after the sale of Pinnacle to Capstone was completed. In the merger agreement, there is all the listing of who is the seller. That's Fenway and Prudential, capital companies. They are the only holders of the voting shares of stock. In addition, there's a second category of class of stock that's all owned by equity companies. Then there are approximately 13 individuals who owned non-voting, non-ownership equity employee sale stock shares. Those were paid out when that sale was completed from Pinnacle to Capstone in May of 2000. I'm going to get my date wrong, and I don't want to do that. May of 2015. In July of 2015 is when those restrictive covenants are entered into as part of and as required as the continued employment of three of the individuals. One of the individuals who's bound by the preliminary injunction didn't even sign a restrictive covenant, wasn't issued the new employee ownership shares in Capstone, nor did he profit from the sale which has made . . . there's a lot of talk about the amount of money that was paid to three of the individuals as a result of the sale from Pinnacle to Capstone. One of those he's bound by the preliminary injunction. Under California law, if that's the law that applies, the analysis I think ends right there. These restrictive covenants are buried in the covenants to get employee stock two months after a sale as a result of if you want to continue to be employed by your new employer, Capstone, and get these employee stock shares, you have to sign this. From those shares, there's been virtually no profit from the three individuals. Can I ask about Rojas? It sounded to me like Rojas is all a Texas guy, and California law, the public policy concerns under California law would not apply to Rojas. Rojas is the individual who didn't sign a restrictive covenant and didn't have original stock in Pinnacle either. What's the law that applies? Is it Texas law? Well, under the . . . if the covenants that the preliminary injunction was based on, if those are the three covenants that were signed in July of 2015, those say that Delaware law applies. We believe that the law requires that the New York court sitting in designation under the venue choice has to employ the substantial relationship test. Did you make that argument to Judge Daniels? Yes, we did, Your Honor. You argued for New York law? No, we argued . . . For California law? Absolutely. Under New York law? Under New York law. Under the New York law that by sitting . . . because venue was proper, that was selected, whether it's the proper form. But you argued for California law using your choice of law? Correct. But I would also submit that Delaware . . . there are two cases cited by opposing counsel that talk about under whether Delaware . . . if you choose the Delaware law under if Judge Daniels had applied Delaware law. Well, one case, again, it's the same test. Is there the sale of the goodwill? Is there a substantial economic factor? The second one in Delaware said, all right, well, this covenant is limited. It's for a year, and it . . . So what is your answer? Assume that you're right, that we should apply New York choice of law. What is your answer to the New York Court of Appeals, Ministers and Missionaries decision? I'm sorry. I apologize, Your Honor. I'm not familiar with which case that is. 2015 decision about choice of law? Okay. So your answer is you don't know? I don't know, Your Honor. But I believe that the law that we cited, which includes the production resource group out of the Southern District of New York and the TGG ultimate holdings, that California law needs to apply. That's Justice Rakoff's decision in TGG ultimate holdings and the Capgemini case. And that you have to apply which state has the most substantial relationship. In answer to the previous question, the three individuals who signed the restrictive covenants, which are at issue, all were or always have been residents of California, worked from California, worked for both Pinnacle and Capstone in California, and entered into these covenants while residents of California. Isn't the principal point of your argument, though, that you made to us in whole, that we don't know what the ... We, three up here, don't know the basis for Judge Daniel's decision and he needs to articulate at least the facts that he relied on. With all due respect, I believe that's correct. And I believe that what we've seen happen in the year since this preliminary injunction has been in place reflects that confusion. Is the record adequate before the district court for it to make findings based merely on a ... I don't mean merely, but based on a review of what's there or does there have to be further proceedings? I do not believe there has to be further proceedings because I believe that the record, the facts and evidence are unequivocally clear that the major fact that this, both the temporary restraining order and the preliminary injunction were issued on, was that these restricted covenants were issued in connection with the sale and for consideration, large consideration from that goodwill sale. That's absolutely incorrect. There is no legitimate basis to argue that restrictive covenants entered into two months after the sale of a company that these individuals didn't have the right to sell. They're not the sellers of the company. They're not Prudential or Fenway. They didn't have any input, right to object to or negotiate price or terms or conditions of that sale that happened two months before they signed restrictive covenants. Okay. I thought your original motion was, we don't know enough here. There's not enough on this record to support these preliminary injunctions and they should be vacated. It sounds to me like you want us to make a further finding that these were not part of the merger. You want us to make that finding? I think if the court would like to go that far, it has the ability to do so. I certainly would like it to, but you are correct. If that's not in my wheelhouse, then I think at the very minimum that the preliminary injunction needs to be vacated and returned back for findings consistent. Wasn't there a hearing where Judge Daniels provided an explanation? I grant you that if all you do is look at the four corners of the final order granting the PI, the injunction, it doesn't provide the background or the facts, but wasn't there a prior hearing? Yeah. Of course there was a hearing, absolutely, and there is a transcript from that hearing. Isn't that enough? I don't believe so, Your Honor. So you make findings in that proceeding? I do not believe so. On the record? No, Your Honor. He did not. Didn't he make a finding about irreparable harm from stealing customers? Stealing is a bad word, from soliciting customers. I don't know that he made findings of fact. He questioned counsel for Capstone, like, for example, what was the trade secret that wanted to be protected, and there was no answer for that, and then came up with a solution, well, I'm just going to require them to give back all of your information. That's sufficient. He also made a finding, if you want to call it that, that with respect to the one customer that was at issue that went with my clients versus Capstone, because of a personal relationship with Mr. Poffenberger, as has been testified to, that monetary damages were sufficient, that there did not need to be the extraordinary remedy of injunctive relief. Thank you. You've reserved some time for rebuttal, Ms. Farber. Thank you, Your Honor. Let's hear from Mr. Yu. Good morning. Good morning, Your Honors. May it please the Court, my name is James Yu and I will be arguing on behalf of the appellees. In their briefs on appeal, and as continued through this argument, the appellants mischaracterized the record below in a number of instances in an effort to cast doubt on the propriety of Judge Daniels' decision. And I want to address three of these instances in particular that go to the heart of the issues on appeal. First, the appellants argued that Judge Daniels did not properly make any findings of fact to conclusions of law. As Your Honors pointed out, there was a transcript of the hearing below, and what's interesting is that nowhere in their opening brief do they acknowledge or cite at all to this 99-page transcript of the preliminary injunction hearing. 1333, 1390-something, so, yeah. Excuse me, Your Honor? It's in the appendix. It's a long transcript. Right. I read that transcript. I had a hard time finding the conclusions of law and findings of fact. I thought I found a couple. I thought I found that he applied Delaware law, or he at least rejected California law, and I thought he made a finding that irreparable harm was caused by soliciting, if they solicited customers, that would cause irreparable harm. I thought I found those two. Yeah, they are scattered around the transcript. What else is in there besides those two? Well, for example, in pages 51, we enumerate them in our brief on page 23 of our brief, and I could list some specific examples. I could not exactly connect what you enumerated to the transcript. Well, let me give one example. So, one example is that Judge Daniels found that the defendant's two capstones customers in their effort to do business with those customers amounted to solicitation. The defendants disputed that at the preliminary injunction hearing, saying, oh, well, you know, we just made a general capabilities presentation. That's not solicitation. And Judge Daniels specifically gave, in the colloquy, specifically referenced to, or responded to an argument by defendant's counsel, saying, like, all we did was respond to an RFP. And Judge Daniels said, well, isn't that solicitation? And there was a lot of argument about that, but ultimately, it was clear from the transcript that Judge Daniels found. That's my problem. I think Judge Daniels engaged everyone with a lot of questions, and then after this colloquy is over, I'm looking for, and therefore, I conclude, and I didn't often see that. Yeah, but he does, starting about page 90 of the transcript, does eventually engage in his findings of fact and conclusions of law by saying that Page 98, for example, he specifically says the choice of law is Delaware. That's what I find. Right. Correct. And starting around page 90, he does say that, you know, he does find irreparable harm. He does find that there was a likelihood of success in the merits, and that was based, I want to point out, that it was a voluminous record that was submitted to the district court prior to the preliminary injunction hearing. Literally every single deposition transcript, or virtually all the deposition transcripts, were submitted to Judge Daniels prior to the hearing, in addition to half a dozen declarations. And I want to point out that The problem I have with all of this, though, frankly, is that I'm not normally, my colleagues can speak for themselves, we are not normally in the business of parsing through all of this and saying, oh, there's a finding, there's a finding, there's a finding. I'm not sure we've been given a particularly good, if any, road map of the findings that are needed to support the issuance of a preliminary injunction. Where are they? They are in the transcript, Your Honor. Again Yeah, well, I'm hearing you say that, and I'm not going to search through 500 pages of transcript looking for little points. It seems to me that what happens in a normal situation is the district court lays out the findings of fact on which he or she determines that there's a likelihood of success on the merits and the various other factors for issuance of a preliminary injunction, concludes or points out what the analysis is for deciding what the choice of law is and why we're proceeding under Delaware law and not under California law, and then yields something that is reviewable for abuse of discretion. Yeah, I understand that, Your Honor. And you will agree with me that what's at SPA 1 and 2 does not do that, and 3. The order does not, correct? Right. Yes. But the order, it was clear from the transcript that at the end of the hearing, Judge Daniels directed the parties to prepare proposed forms of order that reflected the judge's decision, and SPA 1 through 3 was prepared by the judge after considering the proposed form of orders. Neither of the proposed forms of order, either by Capstone or by the judge, did not reflect the conclusions of law. But I think your point, your legal point is that that is not required. That's correct. In fact, we cite two cases in our brief that expressly say that there's no requirement in the Second Circuit that findings of fact and conclusions of law have to be set forth in an order. Although, the practical point is that that's preferable. Preferable but not required. Let me ask you about the employee restriction. Although I did find some indication in the case that Judge Daniels found that the solicitation of customers was irreparable harm, I didn't find anything about the employees. Is there something that you can point me to about a finding that upholds the, that would support the part of the order which refers to employees? The non-solicitation of employees you're referring to? Yeah. Well, I first want to answer that question in two parts. One, I don't believe that the defendants are challenging the propriety of that aspect of the order. Number two, I think I have to kind of get into an explanation about Capstone's business a little bit in order to answer that question. So the way Capstone operates is it manages various customer sites, distribution centers for a number of their customers, including, for example, the customers identified in the UNFI CVS, companies with national businesses with large distribution needs. And at each of these distribution centers, Capstone employs a mobile workforce that are in charge of unloading cargo from trucks, breaking down the pallets, moving the cargo into the warehouses. And that is essentially Capstone's business model. And a lot of times the employees are specifically recruited to work at a specific customer site. The site managers that manage those employees have specific knowledge about the operations of those customer sites. And so one of the things that can happen is if you allow a competitor to take away those associates and those employees as what happened in Colorado with DPI, suddenly there's a vacuum where Capstone is unable to continue providing logistic services at that specific site. And so we had no choice but to transition that site over to DPI prior to the termination, the official termination of our agreement with DPI. That's just one specific example. So what do you think we're arguing about here? It seems to me that there is no argument about not using proprietary information. That sounds, that seemed to me it was off the table, that part of the order, right? Well, to the extent that they argue that they've returned everything, one, we dispute that. But secondly, yes, as far as I understand, they're not appealing that aspect of the order. And you think they're not appealing anything dealing with the non-solicitation of employees either? You think we're only talking about the solicitation of customers? That's correct. Well, they don't raise that in their brief. And as far as I am aware, under California law, the non-solicitation of employees is enforceable, regardless of whether we're talking about California law, Delaware law. How about the solicitation of customers? Under California law, it can be enforceable. There are actually cases in California that have enforced non-solicitation of customers, specifically where necessary to protect trade secret information of legitimate business interests of the company. Trade secrets is off the table. Well, no, it's off the table insofar as they're not appealing the part of the order where they say that we're not going to, they're not going to use our trade secrets. But there are cases where they specifically require the use of trade secrets. In other words, you can have a blanket non-solicitation provision to the extent necessary to protect trade secrets. And here, what happened is, there's ample evidence that we presented to the district court where not only did they have access to our trade secrets, but they, in fact, used our trade secrets in order to obtain business from customers. There was ongoing negotiation. The appellants mentioned one customer. That's just not true. There were ongoing negotiations with half a dozen customers by the time that the injunction was entered. They entered into a contract with DPI, but they used a copy of Capstone's confidential contract with DPI in order to draft that contract. What they literally did was they converted that contract from a PDF into a Word document and then tried to, and they used that as a basis for their contract with DPI. And that's just, you know, one example. There were examples where Defendant Rojas, and this is one of the reasons why we named him as a defendant, three weeks after he left the company, he's already working for, he's already working for Humano, and he literally accesses two UNFI files from a computer that he supposedly deleted before he returned it for inexplicable reasons. And UNFI was the customer that he was specifically charged with managing while he was an employee of Capstone. Is it Rojas that Ms. Ferber said didn't sign an agreement? He actually signed an employment agreement that contained a non-solicitation provision under Texas law. And wasn't it also Choice of Forum, Texas? Choice of Forum was Texas, but we actually didn't sue him under that agreement. The injunction against Rojas arises from two facts. One is that, as I mentioned, he was instrumental in assisting Humano in trying to obtain business from UNFI, which is the second largest customer of Capstone, and he was a dedicated representative on behalf of Capstone for UNFI. Two, he also is an agent for Humano, and to the extent that, which is 100% owned by Pedro Navarrete, to the extent Humano is enjoined, and Mr. Rojas is working for Humano, he should be enjoined as well. So his non-solicitation employee agreement is off the table? Well, we actually, I know this is not on the record, but there's actually a pending motion for leave to amend the complaint now to include a breach of contract under his agreement. But the PIs to him is based effectively on an agency principle? Correct. And his access to trade secrets. What we're concerned about is that they were using him as a proxy. How do we know what you just said? Because it's in the record, or at least it's in the appendices that we've submitted, the declarations and the discovery that was produced by the defendants prior to the preliminary injunction order, which was all presented to the district court. So essentially, we're recreating the preliminary injunction because Judge Daniels didn't tell us that that's what he did. It's not in the transcript, that's right. So how do we know what Judge Daniels relied on or whether it was that? Well, I think ultimately, it's not, I don't think we have to specifically find whether or not Judge Daniels relied on those facts or not. I think it's just sufficient to determine based upon the facts that were presented to the district court and the district court's transcript whether or not there was sufficient findings of fact and conclusions of law such that the court did not abuse its discretion in granting the preliminary injunction, correct? Thank you, Mr. Yu. Thank you, Your Honor. Mr. Berber. Can I just straighten out something? Are you challenging the provision relating to employees in the order? Yes, Your Honor. As we've argued, under California law, under Business and Professions Code section 16-600, that restrains anyone from engaging in a lawful profession, trade, or business of any kind. And that includes, if you expand the way that the final order was issued by Judge Daniels, that the solicitation of any employees across the entire United States of America, right, that effectively impedes your ability to engage in your profession. If I look at your brief, I will see where you specifically challenge that part of the order. I believe so, Your Honor, both in our bullet brief and in our reply brief. Okay. And I also want to talk about . . . Can you prevail if we disagree with you and determine that, at least with respect to the three, exclude Mr. Rojas for a second, Delaware law applies? I believe we still prevail under Delaware law as well, Your Honor, because the central argument is, were these restrictive covenants issued with respect to the sale of goodwill of a business? Delaware still recognizes differently than New York, maybe not as strong a public policy of California, but still has reasonable limitations on non-competition. And these restrictive covenants were not issued or in consideration for the sale of a business. They also are not limited. As we sit here today, Mr. Navarrete, the sole shareholder of Humano, his two-year restrictive covenant has already expired. That expired in May of this year. So we're still here, restrained, even though that time has passed. And the Delaware case cited in opposing counsel's brief, that was a covenant that they said, all right, it's within 50 miles, it's for one year. That's a reasonable restriction, even though it's not in connection with the sale of a business. So I believe, even under Delaware law, we would prevail. I want to point out one of the problems with not having the clear findings of fact in law. What we're talking about in terms of what these companies do, for lack of a sexier definition, they unload trucks. It's not secret formulas. It's not a complicated technological world. They unload trucks. And so the definition of customer was important. And Judge Daniels, at page 55 of the transcript, there's a colloquy there where he talks about, well, what may be a customer? And what may enable them? At what point do they stop being Capstone's customer? And he gives an example of, well, maybe if where there's evidence that they've stopped doing business or are ready to stop doing business, then you might be able to start talking to them. Do you agree that the law, as I understand it at least, but I might be wrong, is that the district court, even though it might be preferable, is not required to provide findings of fact and conclusions of law explicitly in the final order, granting an injunction? I think as you stated, Your Honor, you are correct, even under the I wonder case. But certainly not only is it preferable, there has to be a way with this extraordinary remedy of restraint of trade that there is an easily identifiable way for both sides to know what the conclusions of fact and law are. Sure. That's preferable. Right. But what I'm asking is, is there a legal requirement? I believe that this court could find under its prior decisions . . . No, no, no, no, no. Is there a legal requirement? No. I would agree with you in the way you say it. But I do believe that to enable for an individual or a company to comply with this extraordinary remedy, right, where we know Judge Daniels found that at least with respect to DPI, that economic relief was appropriate, so why would that not be appropriate, for example, with respect to any other potential customers? There is also evidence in the transcript where Judge Daniels asked counsel repeatedly, tell me what you want. What's the trade secret? Tell me what you want. I want to give it to you. And not just give back information, as counsel talked about in his statements to the court. Give back our form files. Give back copies of contracts. Don't use that. Tell me what the trade secret is that you want me to protect. And there was no answer to that. So it's unclear what trademark, if any, or trade secret, excuse me, I misspoke, Your Honor, is being protected here. I understand that last week they filed now to amend the complaint. Trying to include Mr. Rojas in an independent way. Registering as late as last week a copyright, maybe in recognition that there are no trade secrets here. But based upon the record that we have and the transcript and then the order, we don't really understand or know what the basis for the extraordinary issuance of this injunction was. And why, for example, monetary- All of these restrictive covenants expired? Mr. Navarate's has expired. The other two expire in the spring of 2019. And that includes Rojas? Well, Rojas is interesting because, again, that's not part of the record or what they argued. Mr. Rojas entered into an agreement in 2013 with Roadlink, which is the predecessor to Pinnacle. So that had a non-disclosure agreement. So that's the only agreement I'm aware of. So if that's what counsel's referring to, I don't know if you have confidential information that survives. Well, I think that the argument was that there's an agency principle and through Humano, that's so we would look to whatever restrictions are associated with the company. Well, Mr. Navarate is 100% shareholder of Humano, and his covenant has expired. So if we're arguing an agency theory, then my argument would be that it would flow through Mr. Navarate's. Okay, I thought Rojas signed this non-disclosure, non-solicitation agreement, which all referred to Texas law, right? Yes. Okay, and that was in 2013? Yeah, and that was with Roadlink. If I'm understanding the same agreement, that's the only agreement I'm aware of. Okay, so in this case, he says they weren't suing under that. As it stands before us, without amendment of the complaint, it's just the agency relationship. Correct, and the motion to amend has not been heard. Can I ask about Mr. Poffenberger? Yes. His employment agreement referred to Georgia law. What's Mr. Poffenberger got to do with Georgia? Mr. Poffenberger has nothing to do with Georgia. Georgia is where Capstone headquarters are and Pinnacle's headquarters were. Mr. Poffenberger's never lived or worked in Georgia other than the extent that his- Working in California. And has always done so and lived in California. And just for factual, the exact dates of those remaining, Mr. Poffenberger's restrictive covenant would expire in 3 of 19 and Mr. Willis's in June of 19. Thank you. Thank you, your honors. Thank you both. Helpful arguments will, excuse me, will reserve decision. Thank you.